. CLARENCE S. MATTHEWS *v.* EDWARD H. COTTON.

1. AFFIDAVIT.        *Supreme court.*        *Practice.*        *Objections not made in court below.*

   The objection that an affidavit in replevin was not duly sworn to will not be considered when made for the first time in the supreme court.

2. JUSTICE OF THE PEACE.        *Civil jurisdiction.*        *Town charter.*        *Laws* 1866, *p.* 182.

   Under a municipal charter which provided for an additional justice of the peace for the town, the civil jurisdiction of such justice under the general law is in nowise limited by a further provision of the charter that the mayor and councilmen may fix penalties for violation of the charter or ordinances, the offense to be ascertained by trial before the mayor or justice of the peace for the town.

FROM the circuit court of Pike county.

HON. MOYES H. WILKINSON, Judge.

Matthews, appellant, was plaintiff, and Cotton, appellee, defendant, in the court below. The opinion sufficiently states the case.

*Ratcliff & Wall,* for appellant.

The legislature established or created the office of justice of the peace for the district of Summit. See Laws of Mississippi, p. 182, sec. 2 (Laws 1866-7), and p. 183, sec. 5 (Laws 1866-7). This law was amended by the Laws of Mississippi of 1880, p.

486, sec. 1, making the term of this office two years instead of one year, and the term of office now stands at two years, and this is the only amendment touching this office.

When new or additional districts are created or established for the election of justices of the peace no jurisdiction is prescribed in the act except the justice of the peace of the new district has the same jurisdiction as other justices of the peace. See Laws of Mississippi of 1880, pp. 306, 307. The same is true of circuit and chancery judges. The acts creating these offices do not prescribe or set out the jurisdiction. They look to the general law for that.

When a justice of the peace is elected for his district (that may be any subdivision of a county) and when he has duly and legally qualified by making his bond and having it approved, and by taking the required oath, etc., as such, he is a justice of the peace of the county and his jurisdiction is prescribed by secs. 2394 and 2395 of the Annotated Code of Mississippi or 1892.

The mayor of a city or town is, by law, *ex officio* a justice of the peace of the county, and is vested with jurisdiction, civil and criminal, within his district. See *Brown* v. *State*, 75 Miss., 842; *Nickels* v. *Kendricks*, 73 Miss., 711; *Bell* v. *McKinnie*, 63 Miss., 187, and he may preside as a justice of the peace at an eminent domain trial. See chapter 142 of the Annotated Code of Mississippi of 1892, and *Nickels* v. *Kendricks*, 73 Miss. 711.

The act of 1866-7 did not, and is not intended to, create a court inferior to the justice court, or to create any court at all. It merely created a new, additional district of a court already created, to wit: that of justice of the peace, the jurisdiction of which was already fixed by statute.

Where a new county is formed the act prescribes no jurisdiction for the officers holding office in such a county, the judges etc. The venue and jurisdiction are fixed by law. See *Murrah* v. *State*, 51 Miss., 675. The same is true where a county

is divided into two or more districts.   See *Spivey* v. *State,* 58 Miss., 858.   . On the question of jurisdiction, and also as to trial *de novo* in circuit courts, see *Heggie* v. *Stone,* 70 Miss., 39, and *Prewett* v. *Nash,* 50 Miss., 584, specially.

The other questions raised by appellee should not be regarded because raised here for the first time.

*J. W. Cassedy,* for appellee.

The plaintiff, by his attorney, filed a paper before A. O. Hurst, purporting to be an affidavit for a writ of replevin for certain property therein described, but failed to swear to the affidavit.

The judgment should be affirmed because A. O. Hurst, as town justice of the peace, had no civil jurisdiction, and, of course, if this be true, the circuit court could acquire none.

The legislature, acting under sec. 24, article 6 of the constitution of the state of Mississippi (see p. 663 of the code of 1871), being as follows: "The legislature from time to time shall establish such other inferior courts as may be necessary, and abolish the same whenever they shall deem it expedient," granted to the town of Summit a charter, October 26, 1866 (see acts of legislature 1866, p. 182).   Section 2 of said charter provides that the officers of the said town shall consist of a mayor, four councilmen, one justice of the peace, and one constable.   Section 3 provides that the mayor shall by virtue of his office as a justice of the peace exercise the same powers and jurisdiction and be entitled to the same fees as are allowed by law to other justices of the peace for the county of Pike.

The court will notice that this section confers no power or jurisdiction on the justice of the peace of the town.

If it had been the intention of the legislature to create two officers, mayor and justice of the peace, at the same time with the same jurisdiction and power, why should the justice have been left out of this section?   There is but one explanation consistent with reason that can be given, if we are to assume

that the legislature were exercising at least common sense. And this explanation is that it means exactly what it says and has no application whatever to the justice of the peace any more than other sections of said charter in reference to other officers, as for instance that describing the duties of the councilmen where no power is granted to the justice and none can be given unless by a process of judicial legislation his office be written into the grant of power given another.

Section 5 provides for the passage of by-laws with penalties and fines for their violation, and that the offense for the violation of such by-laws shall be ascertained by trial before the mayor or the justice of the peace for the said town.

Thus the legislature, by virtue of the constitutional warrant aforesaid, thinking the necessity to establish an inferior court to try and punish all violators of the said by-laws afterwards to be enacted by the mayor and council, created in this charter the office of town justice of the peace, and granted to said court that power only.

It granted to the mayor the power of other justices of the peace, and, by omitting the town justice in this grant of power, expressed as emphatically as if it had been directly stated that this power was not granted to them, unless the court says the legislature forgot this judicial tribunal and failed to clothe it with sufficient judicial ermine. This, however, cannot be said, because the legislature did afterwards, in the section above quoted, make provision for its jurisdiction. The attention of the court is therefore called to the statement in appellant's brief that this was a creation of a judicial office without jurisdiction or power, and said statement is answered by the charter which defines and limits it as above set out.

This act, touching the point involved, has not been amended or changed, though most of the other provisions relating to other matters have been amended. 8 N. Car., 311; *Thompson* v. *Cox,* 43 Barb. (N. Y.), 412; *DuBois* v. *Sauls,* 20 Ill., 525; *Inspectors of Peoria* v. *People*.

The attention of the court is called to the further fact that A. O. Hurst failed to have his official bond approved, and, under any view of the case, he could not exercise the power conferred upon him for the reason that the execution of said bond is a condition precedent to the grant of the power.

The court will find in the acts of 1876, p. 33, an act of the legislature conferring upon mayors of incorporated towns in this state power as justices of the peace and the marshals as constables, but it nowhere grants to any town justice new powers.

This act was evidently passed for the purpose of eliminating the constitutional question of the right of the legislature by charter to grant extrordinary powers to the officers of one town and make no provision for all others coming in the same class.

There is no act of the legislature curing the same question as to the office of town justice. And thus should the court hold this extraordinary officer has both criminal and civil jurisdiction, then he will be the only one of his kind in the state.

Argued orally by *Clem V. Ratcliff,* for appellant, and *Jas. W. Cassedy,* for appellee.

CALHOON, J., delivered the opinion of the court.

This record shows no objection in the circuit court to the affidavit in the replevin in the court of the justice of the peace. Even if that affidavit was defective—and we by no means decide that it was—it was susceptible of easy amendment in the circuit court, where the trial is *de novo,* and we will not consider objections to it made here for the first time.

Matthews brought replevin against Cotton in the justice's court for a mare, and won his case, but one Covington interposed a claim for the property; and it seems, curiously enough, that both sides conceded that Covington had the legal title as against both, and he got judgment to that effect on the claimant's issue. In the absence of explanation, we suppose the plaintiff and defendant recognized that, as against them both, Covington was entitled to the possession, but each claimed such right as

against the other, subject to the right and title of Covington, temporary or permanent. Be this as it may, Matthews got the verdict of a jury and judgment as against Cotton, and Cotton appealed to the circuit court, apparently from both judgments. Now, when Matthews was thus brought by appeal into the circuit court, he there encountered a motion by Cotton to dismiss the suit on the ground that the justice's court "had no jurisdiction to try civil causes." This motion the circuit court sustained, and gave "judgment against C. S. Matthews for all costs," and Matthews appeals to this court.

The predicate of this motion is secs. 2, 3, 5, and 6 of chapter 128, p. 182, Acts 1866-67, incorporating the town of Summit. Section 2 provides for the annual election "of five councilmen, one justice of the peace, and one constable." Section 5 provides that the persons elected shall take the oath of office. Section 6 provides that the mayor and councilmen may fix penalties and fines for violation of the charter or ordinances, "the offense to be ascertained by trial before the mayor, or the justice of the peace, for the said town." Section 3 makes the mayor *ex officio* justice of the peace. We cannot subscribe to the contention that the justice is limited to criminal jurisdiction because he is given the power, which he would not otherwise have, to try cases of violation of ordinances of the town. The jurisdiction of justices of the peace is regulated by the general law and well understood, and, when one is provided for a new district created by law, the whole jurisdiction pertaining to that office, both civil and criminal, attaches at once.

*Reversed and remanded.*